CollIN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| CORINNE COLLINS,<br><br>    Plaintiff,<br><br>v.<br><br>OFFICE OF THE ATTORNEY<br>GENERAL CHRISTOPHER M.<br>CARR, STATE OF GEORGIA<br>DEPARTMENT OF LAW;<br>CHRISTOPHER M. CARR; and JULIE<br>ADAMS JACOBS,<br><br>    Defendants. | Civil Action No.<br><br><br>JURY TRIAL DEMANDED |

## COMPLAINT FOR DAMAGES

Plaintiff Corinne Collins ("Plaintiff" or "Ms. Collins") files this Complaint for Damages, showing the Court as follows:

## NATURE OF COMPLAINT

1. Plaintiff invokes the jurisdiction of this Court and brings race discrimination and retaliation claims for violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e ("Title VII"), the Fourteenth

Amendment to the United States Constitution as enforced through 42 U.S.C. §1983, and 42 U.S.C. §1981.

## ADMINISTRATIVE PROCEDURES

2. Plaintiff fulfilled all conditions necessary to proceed with her claims under Title VII by timely filing a charge of discrimination and retaliation with the Georgia Commission on Equal Opportunity and the United States Equal Employment Opportunity Commission ("EEOC") on January 29, 2021.

3. Plaintiff timely files her Title VII claims in this action within 90 days of receipt of the September 22, 2022 Notice of Right to Sue issued by the U.S. Department of Justice Civil Rights Division and the EEOC.

4. Plaintiff has complied with all other conditions precedent to bringing the claims in this action.

## JURISDICTION AND VENUE

5. Plaintiff invokes the jurisdiction of this Court pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

6. The unlawful employment practices alleged in this Complaint were committed within this district and Defendants reside and/or worked in the district.  In accordance with 28 U.S.C. § 1391(b), venue is appropriate in this Court.

## PARTIES

7. Plaintiff is a Black female citizen of the United States of America and subjects herself to the jurisdiction of this Court.

8. Defendant the Office of the Attorney General Christopher M. Carr, Georgia Department of Law ("Carr DOL") is a governmental unit of the State of Georgia located at 40 Capitol Square SW, Atlanta, GA 30334 and is subject to the jurisdiction of this Court.  According to its website, Carr DOL represents the State of Georgia in all civil cases before any court and in all cases before the Supreme Court of the United States.  Carr DOL may be served with process by service upon its Attorney General Christopher M. Carr at 3340 Capitol Square SW, Atlanta, GA 30334.   Plaintiff provided notice of her claims against it to Carr DOL in December 2020.

9. Carr DOL's stated mission is to "serve the citizens of the State of Georgia by providing legal representation of the highest quality to the agencies, officers and employees of state government and by honorably and vigorously carrying out the constitutional and statutory responsibilities of the Attorney General."

10. At all times relevant, Carr DOL has employed fifteen (15) or more employees for the requisite duration under Title VII and is an "employer" within the

meaning of Title VII.  On information and belief, during the relevant time period Defendant Carr DOL employed more than 250 employees.

11. Defendant Christopher M. Carr ("Mr. Carr") is a white male and currently the Attorney General for the State of Georgia.  Mr. Carr holds an Executive Office leadership position for the Carr DOL and all sections of the Carr DOL report to Mr. Carr.  Mr. Carr can be served with process at the Office of the Attorney General Christopher M. Carr, 40 Capitol Square SW, Atlanta, GA 30334.

12. Defendant Julie Adams Jacobs ("Ms. Jacobs") is a white female who became the Deputy Attorney General of the Commercial Transactions and Litigation Division of the Carr DOL in 2020.  In that role Ms. Jacobs managed more than forty attorneys and support staff, including Plaintiff. Georgia Governor Brian Kemp appointed Ms. Jacobs to a Cobb Superior Court judge position in August 2022, and she may now be served with process as the Honorable Julie A. Jacobs, Cobb Superior Court, 70 Haynes Street, Marietta, GA 30090.

## STATEMENT OF FACTS

13. Plaintiff began working for the Carr DOL December 16, 2015 as a paralegal in the Commercial Transactions & Litigation Division's tax section.

4

14. Prior to 2020, Plaintiff was considered a strong performer in the tax section. Plaintiff was known to have a quiet and professional demeanor and to be concise and direct in her work communications.

15. The Carr DOL followed a progressive discipline policy which outlined multiple steps for addressing employee performance and/or behavioral concerns.

16. Plaintiff was never subject to written discipline while employed by the Carr DOL.

17. In early 2020 Carr promoted Ms. Jacobs to Deputy Attorney General, and her responsibilities included the tax section of the Carr DOL.

18. Plaintiff immediately noticed Ms. Jacobs engaging in racially hostile microaggressions toward her and other Black support staff in the workplace. For example, Ms. Jacobs routinely greeted and/or spoke to white employees but declined to similarly speak to or acknowledge Plaintiff in the office, even when Plaintiff spoke to Ms. Jacobs first.  Plaintiff observed that other Black support staff were subject to the same racially disparate microaggressions on the part of Ms. Jacobs., while Ms. Jacobs did not subject white support staff to the same treatment.

19. In a continuing pattern of racially microaggressive behavior, Ms. Jacobs similarly gave preferential treatment to white support staff.  For example, the Carr DOL had a practice of providing available offices to paralegals on the basis of seniority.  When an office became available in 2020, however, Ms. Jacobs gave a junior white paralegal the office, although Plaintiff was next in line for an office based on seniority.

20. Similarly, Ms. Jacobs allowed white support staff members to work from home more frequently than Plaintiff and other Black support staff during the ongoing Covid-19 pandemic.  Ms. Jacobs also contacted Plaintiff when Plaintiff was working at home to ask what Plaintiff was working on, although she apparently trusted her white support staff to perform their work at home without her oversight or intervention.

21. In January 2020 Plaintiff applied for intermittent leave to reduce her schedule to twenty hours per week for nine weeks in February and March 2020 to care for her grandmother, and her leave was approved.  During this nine-week period, Plaintiff's approved schedule was to work from 10 a.m. to 2 p.m. each workday.

22. On March 13, 2020, Ms. Jacobs emailed division employees at 10:42 a.m. to state that she wanted "all of the paralegals to train **today** to efile" and

included, "I want Corrine to train all of the paralegals who don't know how to e-file in the tax tribunal."  In a follow-up reply email, staff member Jessica Maurer asked whether "2:30 or 3" worked, and Plaintiff responded at 10:51 a.m., "I am leaving at 2.  I have things I'm working on right now and I do not know how long it will take to finish them."  Ms. Jacobs responded to Plaintiff within two minutes, "I need you to do this today."

23. Despite her approved reduced hours schedule, Plaintiff attended and provided the training as Ms. Jacobs directed on March 13, 2020.  After doing so, Plaintiff sent an email to Ms. Jacobs pursuant to Carr DOL's anti-harassment policies, which require an employee to complain about any perceived "harassment," including "disrespectful or bullying behavior," or "behavior that is intended to be intimidating, hostile, degrading or offensive."

24. Plaintiff's March 13, 2020 email to Ms. Jacobs stated, "Though I have completed the training, I say this with all due respect, but I feel as though your email message has a very condescending and demanding tone.  It would have been very helpful if you would have said this ahead of time so I could have prepared to come in earlier or remain here at work a little later."  Ms. Jacobs responded, "I am your supervisor.   Your response and this email is

unacceptable.  I would like to speak with you on Monday at 10:00 in my office."

25. Plaintiff went to Ms. Jacobs's office per her direction and met with her at 10:00 a.m. on March 16, 2020.  Plaintiff was stunned by Ms. Jacobs's anger and open hostility and by the confirmation of Ms. Jacobs's racial stereotyping and implicit and overt racial bias toward Plaintiff.  Ms. Jacobs angrily told Plaintiff that Plaintiff's March 13 email was "unacceptable" and accused Plaintiff of "chewing" Ms. Jacobs "out."  Ms. Jacobs further claimed that Plaintiff had been in a "fight" in the office, without asking Plaintiff any questions or affording Plaintiff any opportunity to respond to the allegation. Ms. Jacobs then stated, "your general demeanor right now" is unacceptable, although Plaintiff had not yet uttered a word in response to Ms. Jacobs's vitriol and furious accusations.

26. During the March 16, 2020 meeting Ms. Jacobs told Plaintiff that she is "so hostile" and that she has "an attitude," again despite the fact that Plaintiff had not been permitted to respond or speak, further confirming Ms. Jacobs's transparent racial stereotyping of Plaintiff as an angry Black woman.

27. As defined by Merriam-Webster, a stereotype is a "standardized mental picture that is held in common by members of a group and that represents an

oversimplified opinion, prejudiced attitude, or uncritical judgment." Black women like Plaintiff have long sought to overcome the angry Black woman stereotype that Black women are hostile, overly aggressive, and bad-tempered.

28. Ms. Jacobs told Plaintiff in the meeting that her own email (about which Plaintiff had complained) was "not condescending," that Plaintiff should not have "shot off that email," that Plaintiff "better adjust her attitude," and that Plaintiff's "attitude is unprofessional." When Plaintiff then attempted to explain that the reason she sent the email to Ms. Jacobs also related to her approved reduced schedule, Ms. Jacobs became even angrier, telling Plaintiff "you think" saying "due respect," – "everything before that comma doesn't matter." Ms. Jacobs also told Plaintiff, "I don't care if you like me," and abruptly ended the meeting saying, "you have to be professional" and "I'm serious about it."

29. Carr DOL represented to the EEOC in its written response to Plaintiff's charge that Ms. Jacobs's March 16, 2020 meeting with Plaintiff was a "counseling" for purported performance concerns.

30. Plaintiff complained to her attorney supervisor Alex Sponseller (white) about Ms. Jacobs's racially hostile and disparate treatment during a March 17, 2020

meeting with him, and according to the Carr DOL's written response to Plaintiff's EEOC charge, during this March 17, 2020 conversation Mr. Sponseller told Plaintiff "she should stop drawing negative attention to herself and to get along with others in the Division better" and that he "could not protect her if the office decided to take action against her including termination."

31.  Neither Plaintiff's March 17, 2020 complaint to Mr. Sponseller nor any of her complaints to other attorney supervisors in the department about Ms. Jacob's hostile and disparate treatment of her were investigated, and the Carr DOL took no responsive action to her complaints.

32. After the March 16 and 17, 2020 meetings, Plaintiff continued to perform her work as directed.  After March 17, 2020, Defendants did not counsel or discipline Plaintiff for any reason.

33. According to the Carr DOL's written EEOC response to Plaintiff's charge, on December 3, 2020, Ms. Jacobs contacted human resources regarding her intent to terminate Plaintiff's employment.  Ms. Jacobs's decision to terminate Plaintiff's employment was motivated by unlawful discrimination and/or retaliation and was in violation of the Carr DOL's own policies and procedures for addressing employee behavior and/or work performance.

34. Ms. Jacobs advised Plaintiff by email to report to the Carr DOL office in person on December 7, 2020.  On that date Plaintiff met with Ms. Jacobs and a human resources representative and was told she was being "terminated" for "problems with your performance."

35. The human resources representative then told Plaintiff that unless Plaintiff stated she was resigning, Plaintiff would "forever" have an "involuntary mark" on her employment, impacting her ability to work for the State of Georgia in the future.  Ms. Jacobs and the human resources representative in fact had prepared a "resignation" statement for Plaintiff to sign.  In response to the threat that she would be unable to be employed by the State of Georgia in the future, Plaintiff provided a statement that she had resigned in writing. Within hours of the meeting Mr. Sponseller sent an email to Carr DOL employees that included the statement "Corinne was terminated today".

36. Defendants' Georgia Separation Notice (Form DOL-800) falsely stated that the reason for Plaintiff's separation was "voluntary resignation."  As a result of this false statement and others made to its own internal department that manages unemployment after Plaintiff filed her unemployment claim, the Carr DOL obtained an initial denial of Plaintiff's right to unemployment compensation two months after Plaintiff filed her EEOC charge complaining

of race discrimination and retaliation. Plaintiff appealed the denial of her unemployment claim, and in a December 22, 2021 appeal hearing, an administrative hearing officer reversed the denial of Plaintiff's unemployment benefits, finding the Carr DOL "initiated the separation by indicating that [Plaintiff] would no longer have a job."

37. By the time of the administrative hearing officer's December 22, 2021 decision, Plaintiff's right to unemployment compensation benefits had been delayed from March 26, 2021 through December 22, 2021 as a result of Defendants' continued discrimination and retaliation. Nevertheless, Defendants filed another appeal after the December 22, 2021 determination, this time asking its/their own department of labor to reopen the hearing to allow Defendants to present more evidence in order to further continue to attempt to prevent and/or delay Plaintiff's recovery of the state unemployment benefits to which she was entitled. After another hearing held on January 20, 2022, a January 21, 2022 decision found the Carr DOL "failed to show good cause to reopen the hearing." Defendants' discrimination and retaliation against Plaintiff resulted in delay of her receipt of unemployment compensation benefits for which she was qualified for almost a year, resulting in additional financial hardship and emotional distress to Plaintiff.

38. According to the Carr DOL's written EEOC response to Plaintiff's charge, during Plaintiff's employment in the Commercial Transactions & Litigation division of the Carr DOL, only four support staff were terminated, including Plaintiff, and all four were Black.  The Carr DOL further advised the EEOC that under Ms. Jacob's leadership from February 1, 2020 until Plaintiff's termination, only two support staff were terminated, including Plaintiff, and both were Black.

39. At all times, Carr DOL and Mr. Carr, as its Executive Officer and the Attorney General of the State of Georgia, ratified Ms. Jacob's and/or others' actions toward Plaintiff as its/his agent during the relevant time period.

40. At all times, Defendants' treatment of Plaintiff was motivated by intentional race discrimination and/or retaliation for her complaints.

41. To the extent Ms. Jacobs or any agent(s) of Defendants acted without authority, Defendant Carr DOL took no action to repudiate such conduct and instead ratified the malicious intent to injure Plaintiff and intentionally discriminate against her on the basis of her race and/or retaliate against her on the basis of her protected conduct.

## COUNT ONE:  RACE DISCRIMINATION
## IN VIOLATION OF TITLE VII (Against Defendant Carr DOL)

42. Plaintiff realleges the preceding paragraphs.

43. Plaintiff worked for Carr DOL as a paralegal for more than five years with a record of strong performance.

44. When Ms. Jacobs became the Deputy Attorney General over Plaintiff's division, she singled Plaintiff and other Black employees out for disparate treatment on the basis of their race.  Plaintiff's race was a motivating factor in Ms. Jacobs's disparate treatment of Plaintiff, and similarly situated non-Black support staff were not subject to Ms. Jacobs's hostile treatment, microaggressions, false "counseling," and termination.

45. In the alternative, Carr DOL empowered its agents to subject Plaintiff to adverse treatment. Plaintiff's race was a motivating factor for Carr DOL's agents when they falsely and with pretext subjected Plaintiff to such materially adverse treatment.  Carr DOL's agents intended for their conduct to cause Plaintiff to suffer the adverse employment actions at issue, and Plaintiff would not have suffered adverse action in the absence of its agents' conduct.

46. Alternatively, Carr DOL intended by its actions to cause Plaintiff to suffer the adverse employment actions at issue, and its actions were a motivating factor in the termination of Plaintiff's employment and efforts to prevent

Plaintiff from receiving State of Georgia unemployment benefits as outlined above.

47. Carr DOL's actions constitute unlawful discrimination on the basis of Plaintiff's race in violation of Title VII.

48. Carr DOL willfully and wantonly disregarded Plaintiff's rights, and its discrimination against Plaintiff was undertaken in bad faith.

49. The effect of the conduct complained of has been to deprive Plaintiff of equal employment opportunity because of her race.  As a direct and proximate result of Carr DOL's violation of Title VII, Plaintiff has also been made the victim of acts that have adversely affected her psychological and physical well-being and her professional reputation.  Accordingly, Carr DOL is liable for the damages Plaintiff has sustained as a result of Carr DOL's unlawful discrimination.

## COUNT TWO:  RACE DISCRIMINATION IN VIOLATION OF THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION AS ENFORCED BY 42 U.S.C. §1983 (Against Defendants Carr DOL and Mr. Carr and Ms. Jacobs in their Individual Capacities)

50. Plaintiff re-alleges the preceding paragraphs.

51. The Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution protects Plaintiff from being subjected to discrimination on the basis of her race by Defendants acting under color of state law.

52. Defendants subjected Plaintiff to racially hostile treatment, terminated her employment, attempted to prevent her from receiving benefits to which she was entitled without basis, and treated similarly situated individuals outside the protected class more favorably than Plaintiff.  Plaintiff's race was a motivating factor in each Defendant's decisionmaking.

53. In the alternative, Ms. Jacobs was motivated by Plaintiff's race when she exerted influence over Carr DOL and Mr. Carr with the intent of causing Plaintiff's termination and subjecting her to different terms and conditions; and the influence of Ms. Jacobs was a motivating factor in Defendants' adverse actions against Plaintiff.

54. Defendants intentionally deprived Plaintiff of her rights to equal protection and freedom from intentional discrimination.  As outlined in the facts above, Defendants willfully and wantonly disregarded the rights of Plaintiff, acted with actual malice and/or the intent to cause injury and conspired to and did cause Plaintiff personal and professional harm and injury, and Defendants' discrimination against Plaintiff was undertaken in bad faith.  Each Defendant

named in his/her individual capacity personally participated in the race-based actions and directly impacted Plaintiff's rights.

55. The conduct of the individual Defendants violated Plaintiff's clearly established statutory and constitutional rights to be free from intentional discrimination of which a reasonable person would have known.  Neither of the individual Defendants, nor any reasonable public official, could have believed his or her race-based actions outlined in this Complaint were lawful in light of clearly established law.

56. The individual Defendants each knew that Plaintiff's federally protected right to be free from intentional discrimination was substantially likely to be harmed by his/her conduct, understood the need to correct such violation(s), and failed to act on that likelihood.  Each of the individual Defendants had authority to address the alleged discrimination and/or take corrective measures on behalf of Carr DOL, had actual knowledge of the race discrimination against Plaintiff, and failed to adequately address the race discrimination or otherwise respond.  Each individual Defendant's act(s) as Executive Officer, Attorney General, and/or Deputy Attorney General further constituted an official decision by Defendant Carr DOL not to remedy the discriminatory conduct.

57. As a result of Defendants' discriminatory conduct, Plaintiff suffered economic damages, emotional distress, inconvenience, humiliation, damage to her professional reputation and career, and other indignities.

## COUNT THREE: RACE DISCRIMINATION IN VIOLATION OF SECTION 1981 AS ENFORCED THROUGH SECTION 1983 (Against Defendants)

58. Plaintiff re-alleges the preceding paragraphs.

59. Defendants' acts of intentional race discrimination sustained by Plaintiff and outlined in this Complaint also infringed on Plaintiff's federally-protected rights under 42 U.S.C. §1981 to be free from race discrimination. Defendants, collectively and each of them individually, acted to subject Plaintiff to racially hostile and disparate treatment, terminate her employment, and attempt to deny her state-provided benefits. Plaintiff's race was a motivating factor in each Defendant's unlawful actions.

60. Defendants willfully and wantonly disregarded Plaintiff's rights, and Defendants' discrimination against Plaintiff was undertaken in bad faith.

61. As a result of Defendants' discriminatory conduct, Plaintiff has suffered economic damages, emotional distress, inconvenience, humiliation, damage to her professional reputation and career, and other indignities.

## COUNT FOUR:  RETALIATION IN VIOLATION OF TITLE VII (Against Defendant Carr DOL)

62. Plaintiff re-alleges the preceding paragraphs.

63. Plaintiff's complaints to managers and agents of Carr DOL about race discrimination constitute conduct protected under Title VII.

64. Defendant Carr DOL's adverse actions, including, but not limited to subjecting Plaintiff to racially hostile and disparate treatment, terminating Plaintiff's employment, and intentionally interfering with Plaintiff's right to state-provided unemployment benefits, each/all because of her complaints of race discrimination constitute unlawful retaliation in violation of Title VII.

65. As a direct and proximate result of Carr DOL's retaliatory actions, Plaintiff has suffered economic and non-pecuniary damages.

66. Carr DOL willfully and wantonly disregarded Plaintiff's rights, and its actions toward Plaintiff were undertaken in bad faith.

67. Carr DOL is therefore liable for damages proximately resulting from its retaliation against Plaintiff.

## COUNT FIVE:  RETALIATION IN VIOLATION OF SECTION 1981 AS ENFORCED THROUGH SECTION 1983 (Against Defendants)

68. Plaintiff re-alleges the preceding paragraphs.

69. Plaintiff's complaints to Defendants about race discrimination constitute conduct protected under 42 U.S.C. §1981.  Plaintiff further engaged in

protected conduct by filing a charge of discrimination and retaliation with the EEOC.

70. Defendants' adverse actions, including terminating Plaintiff's employment, subjecting Plaintiff different terms and conditions than others outside her protected category, and attempting to prevent Plaintiff's recovery of state-provided unemployment benefits, each/all because of the complaints of race discrimination, constitute unlawful retaliation in violation of 42 U.S.C. §1981.

71. As a direct and proximate result of Defendants' actions, Plaintiff has suffered economic and non-pecuniary damages.

72. Defendants willfully and wantonly disregarded Plaintiff's rights, and their actions toward Plaintiff were undertaken in bad faith.

73. Defendants are therefore liable for damages proximately resulting from its/his/her retaliation against Plaintiff.

## **PRAYER FOR RELIEF**

Plaintiff demands a TRIAL BY JURY and the following relief:

(a)     A declaratory judgment that Defendant(s) violated Title VII, Sections 1981 and 1983, and the Equal Protection clause of the Fourteenth Amendment to the U.S. Constitution;

(b)     An injunction restraining Defendant(s) and their officers, agents, employees, successors, and any other persons acting in concert with them, from continuing to maintain practices and policies of discrimination on the basis of race;

(c)     Damages equal to the amount of lost pay and benefits, lost opportunities, and expenses suffered by Plaintiff due to the unlawful discrimination and retaliation perpetrated by Defendant(s), with prejudgment interest;

(d)     Compensatory damages, in an amount to be determined by a jury for Plaintiff's emotional distress, loss of professional reputation, suffering, inconvenience, mental anguish, loss of enjoyment of life and special damages;

(e)     Punitive damages where permitted by statute in an amount to be determined by a jury to punish Defendant(s) against whom such damages are recoverable for their conduct toward Plaintiff sufficient to deter those Defendant(s) from similar conduct in the future;

(f)     Reinstatement of Plaintiff with appropriate seniority or front pay in lieu of same;

(g)     Reasonable attorneys' fees and costs where permitted by statute;

(h)     Pre- and post-judgment interest on any recovery as permitted by state

law;

(i)     In the alternative, nominal damages for purposes of any claim against

any Defendant;

(j)     Trial by jury as to all issues so triable; and

(k)     Such additional relief as the Court deems proper and just.

Respectfully submitted, this  2nd day of November, 2022.

> _/s/Tracey T. Barbaree_
> Tracey T. Barbaree
> GA Bar No. 036792
> Beth A. Moeller
> GA Bar No. 100158
> MOELLER BARBAREE LLP
> 1175 Peachtree St. NE, Suite 1850
> Atlanta, GA 30361
> Phone: 404.748.9122
>
> _Attorneys for the Plaintiff_