IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| CORINNE COLLINS, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. |
| | § | 1:22-cv-04392-WMR-JSA |
| | § | |
| OFFICE OF THE ATTORNEY | § | |
| GENERAL CHRISTOPHER M. CARR, | § | |
| STATE OF GEORGIA DEPARTMENT | § | |
| OF LAW, CHRISTOPHER M. CARR, | § | |
| and JULIE A. JACOBS, | § | |
| | § | |
| *Defendants*. | § | |
| | § | |

## DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT AND BRIEF IN SUPPORT

Defendants Christopher Carr, Julie Jacobs, and the Office of the Georgia Attorney General's Department of Law (AG's Office), move to Dismiss Plaintiff's First Amended Complaint and Brief in Support, showing the Court as follows:

## INTRODUCTION

## I.   THE ALLEGATIONS OUTLINED IN PLAINTIFF'S COMPLAINT[1]

Plaintiff was hired at the AG's Office in December 2015 as a paralegal in the Commercial Transactions & Litigation Division's tax section. (Am. Cmplt., Doc. 7

---

[1] Defendants stress that the allegations in the Amended Complaint are taken as true— as they must be— only for this Motion. Accepting the allegations as true in the current posture does not constitute a waiver or an admission regarding any of Plaintiff's contentions in the Amended Complaint.

1

¶ 13). In early 2020, Defendant Julie Jacobs was promoted to Deputy Attorney General to oversee the Commercial Transactions & Litigation Division, which includes the tax section. (*Id.* ¶ 17). Plaintiff reported to the attorney in charge of the tax section, Alex Sponseller, and was his only full-time support staff member. (*Id.* ¶ 21). Jacobs and Plaintiff had little contact in the usual course of business.

Plaintiff claims that she "immediately noticed" Jacobs engaging in "racially hostile conduct." (*Id.* ¶ 18). These included Jacobs not greeting Plaintiff at the office, while she did greet "white employees." (*Id.*). Plaintiff felt that she was passed over for an office given to a "junior white paralegal." (*Id.* ¶ 19). Plaintiff says that, during the pandemic, Jacobs asked her to "report to the office more often" than white staff and that Jacobs contacted Plaintiff to ask what she "was working on," but there was a white paralegal that was not contacted very much. (*Id.* ¶¶ 20-21). Before the Covid-19 pandemic and since being hired, Plaintiff reported to the office each day.

On March 13, 2020, Plaintiff says that Jacobs emailed division employees to say she wanted "all of the paralegals to train today to e-file," and that she wanted Plaintiff "to train all of the paralegals who don't know how to e-file in the tax tribunal." (*Id.* ¶ 23). Plaintiff responded, "I am leaving at 2. I have things I'm working on right now and I do not know how long it will take to finish them." (*Id.*). Jacobs wrote back, directing Plaintiff "to do this [meaning, the training]

today." (*Id.*). Plaintiff points out that Jacobs was mistaken about the tax tribunal having electronic filing. (*Id.*).

Plaintiff successfully provided the training. (*Id.* ¶ 24). But Plaintiff was upset by the email from Jacobs directing her to train other staff. (*Id.* ¶ 25). She decided to email Jacobs and make her displeasure known: "Though I have completed the training, I say this with all due respect, but I feel as though your email message has a *very condescending and demanding tone*. It would have been helpful if you would have said this ahead of time so I could have prepared to come in earlier or remain here at work a little later." (*Id.* ¶ 24 (emphasis supplied)). After Jacobs read Plaintiff's description of her as "very condescending" and "demanding," Jacobs wrote back: "I am your supervisor. Your response and this email is unacceptable. I would like to speak with you on Monday at 10:00 in my office." (*Id.* ¶ 25). Plaintiff now asserts that her email to Jacobs quoted above— the email describing Jacobs as "very condescending" and "demanding"— was a protected complaint of race discrimination. (*Id.* ¶ 32).

Plaintiff reported to Jacobs' office Monday. (*Id.* ¶ 26). Plaintiff claims that Jacobs told her the email was "unacceptable" and she felt that it "chew[ed]" her out. (*Id.*). Plaintiff contends that Jacobs brought up a fight that Plaintiff was in at the office in front of several staff members. (*Id.* ¶ 27). Plaintiff responds that she was not given a chance to explain the fight and even so, she did not consider the incident she had with a fellow staff member to be a "fight." (*Id.* ¶ 27). Jacobs

allegedly said that Plaintiff's "general demeanor" was unacceptable. (*Id.* ¶ 28). Plaintiff concluded that the meeting "confirm[ed] Ms. Jacobs's transparent racial stereotyping of Plaintiff as an angry black woman." (*Id.* ¶ 29). Beyond the counseling meeting, Plaintiff was not disciplined for the comments she made in her email.

The next day, March 17, 2020, Plaintiff claims that she complained to Sponseller about Jacobs's staff training email and the tenor of the March 16 meeting. (*Id.* ¶ 33). Plaintiff believed Jacobs's treatment was "racially hostile and disparate." (*Id.*).

Plaintiff contends that, based on the complaint, no investigation was conducted into Jacobs's behavior. (*Id.* ¶ 35). Following March 16 and 17, Plaintiff was not disciplined and she "continued to perform her work…" (*Id.* ¶ 36).

Almost nine months later, in early December 2020, Jacobs contacted human resources to discuss Plaintiff's termination. (*Id.* ¶ 37). Jacobs advised HR about Plaintiff's performance issues. (*Id.* ¶ 38). Plaintiff says that the Office's work performance policy was not followed. (*Id.* ¶ 37). Four days later, Plaintiff was told to come into the office for a meeting. (*Id.* ¶ 38).

Plaintiff met with an HR representative and Jacobs. (*Id.* ¶ 35). The rep explained that employees who are terminated for performance issues are not eligible for rehire with the state. (*Id.* ¶ 39). Plaintiff claims this is false. (*Id.*). To mitigate the prospect of losing her eligibility to be rehired in a state job (which,

again, Plaintiff now asserts is false), Plaintiff was given the option to voluntarily resign. (*Id.*). In other words, Plaintiff was told that only employees that leave in good standing are eligible for rehire. After this was explained to Plaintiff, she signed a resignation letter that had been prepared. (*Id.*).

On the Separation Notice, the Office listed the reason for separation as "voluntary resignation." (*Id.* ¶ 39). Plaintiff says that, while technically true, this is false based on the HR rep's claims about the rehire policy. (*Id.* ¶ 40). Unemployment benefits were initially denied. (*Id.* ¶ 41). But after appealing, Plaintiff was awarded unemployment benefits. (*Id.* ¶ 43).

Finally, Plaintiff points out that since Jacobs took over, only two people "were terminated," including herself. (*Id.* ¶ 44). The other was a black lawyer that Jacobs hired that was still in the probationary phase for new hires when it was determined that she was not working out.

Plaintiff brings five claims: (Count One) Race discrimination in violation of Title VII against the AG's Office; (Count Two) Race discrimination in violation of the Equal Protection Clause via 42 U.S.C. §1983 against Carr and Jacobs in their individual capacities; (Count Three) Race discrimination in violation of 42 U.S.C. § 1981 brought under § 1983 against Carr and Jacobs in their individual capacities; (Count Four) Retaliation in violation of Title VII against the AG's Office; and (Count Five) Retaliation in violation of § 1981 brought under § 1983 against Carr and Jacobs in their individual capacities.

## ARGUMENT AND CITATION TO AUTHORITY

### II.    MOTION TO DISMISS STANDARD

In a motion to dismiss brought under FRCP 12(b)(6), the Court must accept the complaint's factual allegations as true. *Hardy v. Regions Mort., Inc.*, 449 F.3d 1357, 1359 (11th Cir. 2006). To survive Rule 12(b)(6) scrutiny, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly* at 555. "[U]nwarranted deductions of fact in a complaint are not admitted as true for the purposes of testing the sufficiency of [the plaintiff's] allegations." *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005).

*Iqbal* states that, while a court must accept all factual allegations in a complaint as true, it need not accept legal conclusions as true. "Determining whether a complaint states a plausible claim for relief will...be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, it has not been shown that the pleader is entitled to relief. *Iqbal* at 679.

The Eleventh Circuit has stated that a complaint must "contain either direct or inferential allegations respecting all material elements necessary to sustain a recovery under some viable legal theory." *Randall v. Scott*, 610 F.3d 701, 716 n. 2 (11th Cir. 2010). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal* at 678.

## III.   RACE DISCRIMINATION CLAIMS

Plaintiff brings several race discrimination claims: (Count One) Race discrimination under Title VII against the AG's Office; (Count Two) Race discrimination under the Fourteenth Amendment via 42 U.S.C. § 1983 against Jacobs and Carr in their individual capacities; and (Count Three) Race discrimination under 42 U.S.C. § 1981 through 42 U.S.C. § 1983 against Jacobs and Carr in their individual capacities.

Title VII makes it unlawful for an employer to discriminate against any individual because of such individual's race. 42 U.S.C. § 2000e(a)(1).

42 U.S.C. § 1981 "is not a general proscription of racial discrimination...it expressly prohibits discrimination only in the making and enforcement of contracts." *Pinder v. John Marshall Law Sch., LLC*, 11 F. Supp. 3d 1208, 1261 (N.D. Ga. 2014).

The *Equal Protection Clause* provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1.

Racial discrimination claims under Title VII, the Equal Protection Clause, and § 1981 are analyzed under the same framework. *Elston v. Talladega Cnty. Bd. of Educ.*, 997 F.2d 1394, 1406 n.11 (11th Cir. 1993); *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1270 (11th Cir. 2004). Racial discrimination requires a showing of "purposeful discrimination." *Henley v. Turner Broad. Sys.*, 267 F. Supp. 3d 1341, 1352 (N.D. Ga. 2017). Under *Iqbal* and *Twombly*, a discrimination claim is not plausible where there is an obvious alternative explanation for the conduct other than intentional discrimination. *Iqbal*, 556 U.S. at 682; *Twombly*, 550 U.S. at 555, 557.

**A. Plaintiff's Allegations Do Not Support Race Discrimination Claims.**

Plaintiff's allegations do not support a reasonable inference of race-based discrimination. And each of the allegations is subject to obvious alternative explanations other than intentional discrimination.

In paragraphs 23-31 of the Complaint, Plaintiff alleges that a job counseling meeting with Jacobs was racially hostile and an email Jacobs sent on March 13, 2020, directing Plaintiff to train other staff members was discriminatory. (Doc. 7

¶¶ 23-31).[2] Plaintiff responded to the directive from Jacobs, the head of the division, with an email describing her as "very condescending" and "demanding." (*Id.* ¶ 25). Jacobs responded by asking Plaintiff to report to her office Monday morning. (*Id.*). At the meeting, Plaintiff alleges that Jacobs reprimanded her for writing the email and for a fight at the office.[3] (*Id.* ¶¶ 26-27). Plaintiff describes the meeting as evidence of "transparent racial stereotyping." (*Id.*).

But the more obvious explanation is that Jacobs was counseling Plaintiff for her hostile email. Plaintiff includes the precise language she contends that Jacobs used. Based on Plaintiff's description of the meeting, it is not reasonable to infer that Jacobs's behavior or comments were motivated by racial animus or intentional discrimination. Plaintiff's allegations of stereotyping and references to an "angry black woman" are unjustified.

---

[2] Although not in the Amended Complaint, some context is useful to understand the email. This background need not be accepted as true for this Motion to succeed and is offered only to explain conduct. In early March 2020, organizations were preparing to have their staff work from home due to the pandemic. This email was sent in the days before the office would permit employees to work at the office and from home. This was the reason for the email's urgency.

[3] While the specifics of the fight are not alleged in the Amended Complaint and have no direct bearing on this Motion, Jacobs had been told about an incident when Plaintiff verbally accosted a co-worker in the presence of other staff members and made comments, such as "are you stupid…" In the Amended Complaint (as opposed to the original Complaint), Plaintiff claims this event was not a "fight." (Doc. 7 ¶ 27).

The Eleventh Circuit has held that "criticisms of an employee's job performance — written or oral — that do not lead to tangible job consequences will rarely form a permissible predicate for a [race discrimination] suit." *Shah v. Orange Park Med. Ctr.*, No. 3:14-cv-1081-J-34JRK, 2016 U.S. Dist. LEXIS 126074, 2016 WL 4943925, at *25 (M.D. Fla. Sept. 16, 2016) (citing *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1241-42 (11th Cir. 2001)). Here, the counseling was not followed by a tangible job consequence. And even if the counseling could sustain a discrimination suit, which it cannot, the claim lacks plausibility.

When a "Complaint itself supplies more than ample reason to think that Plaintiff's alleged mistreatment was motivated by reasons that were not race-based," dismissal of the case is appropriate. *Henley*, 267 F. Supp. 3d at 1353-54 (citing *Heard v. Hannah*, 51 F. Supp. 3d 1129, 1144 (N.D. Ala. 2014); *Twombly* at 557; and *Ford v. Strange*, 580 F. App'x 701, 713 (11th Cir. 2014)). In *Iqbal*, the Supreme Court held that an allegation of purposeful discrimination was not plausible in the light of an "obvious alternative explanation." *Iqbal* at 682. In *Kavianpour v. Bd. of Regents of the Univ. Sys. of Ga.*, allegations in the complaint about the plaintiff's own conduct presented an "obvious alternative explanation for the way the defendants treated her." No. 1:20-cv-152-MLB, 2021 U.S. Dist. LEXIS 126686, 2021 WL 2635854, at *28 (N.D. Ga. Mar. 29, 2021).

The more plausible inference is that Jacobs's counseling of Plaintiff was unrelated to her race. The Amended Complaint itself provides an obvious

alternative that does not support the intellectual leap from rank speculation to probable discrimination that Plaintiff wants the Court to make. The obvious alternative explanation is that Plaintiff was counseled based on the abject language in the email. Other obvious reasons discussed in the Amended Complaint are Jacobs's impression of Plaintiff's attitude at the meeting and the yelling incident that Jacobs was told Plaintiff was involved in at the office.

The same is true of Plaintiff's allegation about work assignments. Plaintiff contends that she was made to come to the office "more often" than "white support staff" and that Jacobs called to ask what she was "working on" but did not call a particular "white support staff" as often. (Doc. 7 ¶ 21). The more obvious explanation is that Plaintiff's supervisor needed Plaintiff to come into the office and that there was a legitimate business reason to inquire into what Plaintiff was working on.[4] Inquiry about the work that an employee is performing — especially remotely — is basic to the running of any entity or business. The Eleventh Circuit has held repeatedly that "work assignments strike at the very heart of an employer's business judgment and expertise" and "do not generally constitute discrimination." *Laster* at \*10 (citing *McCone v. Pitney Bowes, Inc.*, 582 F. App'x 798, 800 (11th Cir. 2014)). It is not reasonable to infer that Plaintiff was being

---

[4] Plaintiff was the only full-time paralegal/administrative employee in the tax division under Mr. Sponseller. As a result, he needed her assistance and her presence at the office more often than staff in some other divisions.

discriminated against. In other words, the allegations do not "nudge[] [plaintiff's] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

Nor does the assignment to work at the office "more often" than others qualify as a tangible job consequence.[5]  When the complaint is simply that an employee was denied the ability to work from home at times, it is not the basis of a discrimination action. *Revere v. Harvey*, Civ. No. 1:06-CV-2485-CAP-RGV, 2009 U.S. Dist. LEXIS 138104, at * 31 (N.D. Ga. Feb. 13, 2009) (holding an employer's failure to permit remote work is "generally not actionable").  Courts have found the denial of remote work to be a tangible employment action only where there is a special condition between the employee and the ability to work remotely or a unique impact from the denial of remote work. Examples of special conditions or unique impacts are: ending remote work for an employee after 15 years,[6] disallowing remote work to a single mother who was already in the process of taking classes for a master's degree when she was hired,[7] and denial of remote work that prevents an employee from relocating to live with her husband in a

---

[5] It is unclear whether Plaintiff alleges that not working from home "as often" as others was discrimination or retaliation. To the extent that Plaintiff claims it was retaliation, however, she states that coming into the office "more often" was also true of "other Black support staff." Presumably, these support staff had not participated in a protected activity and, therefore, were not retaliated against. Thus, Plaintiff's premise is self-defeating in that respect.

[6] *Robinson v. Ergo Sols., LLC,* 257 F. Supp. 3d 47, 52-54 (D.D.C. 2017).

[7] *Yeager v. UPMC Horizon*, 698 F. Supp. 2d 523, 545-46 (W.D. Penn. 2010).

different state.[8] But when an employee complains that she could not work from home in the absence of a special condition or unique impact, courts have held it is not an adverse employment action. *See Revere* at *31 (granting motion to dismiss the plaintiff's Title VII claims where refusal to permit remote work was not an adverse employment action); *Smith v. AVSC Int'l, Inc.*, 148 F. Supp. 2d 302, 312-313 (S.D.N.Y. 2001) (holding it is not an adverse employment action for a new supervisor to withdraw an employee's ability to work at home from time to time).

Plaintiff does not have the kind of special condition or unique impact related to remote work that courts have required to find a tangible employment action. And because Plaintiff was not barred from remote work— she merely alleges that she came to the office "more often" than others— there is even less of a reason to find this was an adverse employment action sufficient to paint Jacobs as a racist. Plaintiff's lone complaint about coming to the office is that it "subjected [her]… to greater exposure to Covid-19…" (Doc. 7 ¶ 20). This "exposure to Covid-19," however, is a complaint of general applicability that would be true for any employee attending an office anywhere in the world. This is not the kind of special condition or unique impact that has been held to be an adverse employment action.

---

[8] *Kapp v. United Techs. Corps.*, 2019 U.S. Dist. LEXIS 246204, at *11-12 (N.D. Ga. Oct. 30, 2019).

Conclusory allegations that rely only on speculation are not "entitled to the assumption of truth" at the motion-to-dismiss stage. *Iqbal*, 556 U.S. at 664. Plaintiff peppers the Amended Complaint with conclusory allegations that are not enough to draw an inference of race discrimination. (*See, e.g.,* Doc. 7 ¶¶ 29, 30, 33). Each of these paragraphs contains accusatory language about "angry black women," and racial hostility, but the factual allegations are only capable of showing, at best, conceivable discrimination. But the mere possibility of discrimination is not enough. The factual allegations must state a claim for discrimination that is plausible[9] under the circumstances. It is neither reasonable or probable that Jacobs's, the AG's Office's, or Carr's treatment of Plaintiff was motivated by racial animus and intentional discrimination.

In the original Complaint, Plaintiff referred to some of the minor allegations as "microaggressions." (*See,* Doc. 1 ¶¶ 18-19). A "microaggression" is defined as "a comment or action that subtly and often unconsciously or unintentionally expresses a prejudiced attitude toward a member of a marginalized group."[10] This term has been removed from the same paragraphs in the Amended Complaint, but it is still a useful term to illustrate why the allegations do not state a claim for discrimination. Microaggressions are merely a form of "those petty slights or

---

[9] Plausible is defined as "of an argument or statement seeming reasonable or probable." *Webster's Dictionary*, "plausible" (adjective), Noah Webster 1913.
[10] Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/microaggression. Last accessed 20 Jan. 2023.

minor annoyances that often take place at work and that all employees experience" which are not actionable discrimination under Title VII. *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006).  And Title VII is not "a general civility code for the American workplace." *Id.*

An example of the microaggression mentioned in the Complaint include the claim that Jacobs did not greet Plaintiff at the office, but would greet "white employees." (Doc. 7 ¶ 18). While it is hard to see how "greeting" an employee would materially alter the terms or conditions of employment— assuming for the sake of argument that it did— Plaintiff does not offer valid comparators. Plaintiff offers generic comparators: "white people" or "white staff" or "white employees" and "black people" or "black staff." (*Id.*). These broad racial groups that Plaintiff contends are comparators, are the types of labels, conclusions, and unreasonable inferences the case law rejects.

Several cases illustrate this point. "If a plaintiff fails to show the existence of a similarly-situated employee, judgment as a matter of law is appropriate where no other plausible allegation of discrimination is present." *Henley* at 1352. "When comparing similarly situated individuals to raise an inference of discriminatory motivation, the individuals must be similarly situated in all relevant respects besides race, since different treatment of dissimilarly situated persons does not violate civil rights laws." *Id.* In *Henley*, the court held that the

complaint's generic reference to "other Caucasian executive assistants" fell short. *Id.* at 1353.

The *Henley* court discusses other cases in which allegations about broad racial groups or vague contentions against an individual identified only by their race were rejected. For example, in *Toomer v. Savannah Rose of Sharon, LLC*, the court dismissed a claim where the plaintiff's comparator was vaguely described as a "less qualified white applicant."[11] In *Arafat v. Sch. Bd. Of Broward Cty.*, the court dismissed a discrimination claim where the complaint made broad references to comparators that were "male and younger" and whose jobs "required equal skill, effort, and responsibility."[12] And in *Laster v. Ga. Dept. of Corr.*, the court held that using the generic term "female officers" to describe comparators was insufficient.[13] In other words, Plaintiff's use of broad race-based groups such as "white staff," or the vague outline of a generic "white person," as a comparator is insufficient for the Court to conclude that intentional race discrimination is plausible.[14]

---

[11] Case No. 4:12-cv-057, 2012 U.S. Dist. LEXIS 37900, 2012 WL 952755 (S.D. Ga. Mar. 20, 2012).

[12] 549 F. App'x 872, 874 (11th Cir. 2013).

[13] LEXIS 174187 at *11.

[14] The other terminated employee was a black attorney *that Jacobs hired* and who was fired during her probationary period. (Doc. 7 ¶ 44 (emphasis supplied)). Thus, this person is not a valid comparator and is immaterial to Plaintiff's allegations.

The other microaggression offered by Plaintiff is that an office was given to a "more junior white paralegal." (*Id.* ¶ 19). Based on Plaintiff's allegations in the Amended Complaint, there is a straightforward obvious alternative explanation. Plaintiff did not want to come to work at the office. In the Amended Complaint she complains about having to come to the office even sporadically. It is a far more reasonable inference that the office was given to an employee that enjoyed working at the office, not that it was given to another employee based on racial animus. Additionally, the Amended Complaint carefully refers to an amorphous "office policy," not Jacobs's policy. An obvious alternate explanation is that Jacobs's policy was not based only on seniority, but rewarded merit, hard work, and dedication, among other legitimate factors related to employee performance.

In short, each of Plaintiff's allegations falls short of the pleading standard from *Iqbal* and *Twombly*. And even if the Court were to accept the unsupported inferences of race discrimination, the claims fail as they do not assert a tangible employment action or a valid comparator. Plaintiff's race discrimination claims should be dismissed against all Defendants as it is more reasonable and probable that each of the allegations is subject to an obvious alternative explanation.

**B. Plaintiff Has Not Alleged Intentional Race Discrimination in the Making or Enforcement of A Contract Under § 1981**

To reiterate, 42 U.S.C. § 1981 "is not a general proscription of racial discrimination...it expressly prohibits discrimination only in the making and

enforcement of contracts." *Pinder v. John Marshall Law Sch., LLC*, 11 F. Supp. 3d 1208, 1261 (N.D. Ga. 2014).

Plaintiff's only allegation that might be attributable to a contract was the end of her employment. Although Plaintiff resigned from her job at the AG's Office, she now contends that she resigned because she was misled about her eligibility to be rehired if she was terminated for performance issues. She claims that it is false that termination for performance issues would preclude her from being rehired.

Plaintiff alleges that she emailed a complaint about race discrimination to Jacobs in March 2020. (Doc. 7 ¶ 32). Plaintiff's resignation— again, the only allegation that arguably relates to the making or enforcement of contracts— took place on December 7, 2020, a gap of about nine months. As a result of the temporal chasm between the purported protected activity and the contract dealings, the allegations do not set forth a plausible claim under § 1981.

## C. Plaintiff Has Not Stated A Claim For Discrimination Related to Unemployment

Plaintiff has not set forth a plausible claim for discrimination related to unemployment benefits. Plaintiff does not point to any comparators, such as any white employees that voluntarily resigned— whether they were asked to resign in place of termination for performance issues or not— where the AG's Office did not contest the award of unemployment. Plaintiff merely refers broadly to "white support staff." (Doc. 7 ¶ 40). This alone is fatal. And Plaintiff has presented

nothing that would allow the Court to infer intentional race discrimination in contesting unemployment, save labels, conclusions, and unwarranted deductions of fact and law.

Plaintiff also admits that, in her appeal, she was awarded the full measure of unemployment benefits. Thus, Plaintiff has already received the unemployment she was entitled to. As a result, the claim for unemployment benefits is moot and Plaintiff lacks standing to ask for redress of an injury for which she has already been made whole.

Plaintiff says she was initially denied unemployment because she made the decision to voluntarily resign. She made this decision to protect her eligibility to be rehired by the State. In other words, the reason for the initial denial was because of her choice to ensure she would remain in good standing.  And it is the Georgia Department of Labor that decides whether an applicant is entitled to an award of unemployment.

For Plaintiff to have the standing to sue for the denial of unemployment benefits, Article III requires the bare minimum of three elements: (1) the plaintiff has suffered a concrete injury; (2) that injury is fairly traceable to actions of the defendant; and (3) it must be likely—not merely speculative—that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

Plaintiff argues that she was denied unemployment benefits. But the denial was redressed when the decision was reversed, and the full measure of benefits was paid. As a result, Plaintiff can no longer claim to have suffered a concrete injury, nor does she have any basis to ask for redress where she has been made whole.

The allegations do not support the inference that Plaintiff was denied unemployment based on intentional discrimination (no valid comparators) or retaliation (the resignation was over nine months after, what Plaintiff claims was, a protected activity). Plaintiff also lacks standing to argue for an injury that has already been redressed. Plaintiff's claims based on the denial of unemployment should be dismissed as to all Defendants.

## IV.   PLAINTIFF'S CLAIMS FOR RETALIATION FAIL UNDER BINDING PRECEDENT

Plaintiff asserts two retaliation claims: (Count Four) Retaliation in violation of Title VII against the AG's Office; and (Count Five) Retaliation in violation of 42 U.S.C. § 1981 through 42 U.S.C. § 1983 against Jacobs and Carr.

Like claims for discrimination, Title VII and Section 1981 retaliation are analyzed using identical frameworks. See *Williams v. Waste Mgmt.*, 411 Fed. App'x 226, 229 (11th Cir. 2011). To establish a prima facie case of retaliation, the plaintiff must show that (1) she engaged in a statutorily protected expression, (2) she suffered an adverse employment action, and (3) there was a causal connection between the two. *Batson v. Salvation Army*, 897 F.3d 1320, 1328 (11th Cir. 2018).

One way that a plaintiff can show a causal connection is by providing sufficient evidence that a decision-maker was aware of the protected activity, and that there was close temporal proximity between this awareness and the adverse action. *Hughes v. Walmart Stores E.*, 846 Fed. App'x 854, 858 (11th Cir. 2021). Without more, a claim of retaliation fails as a matter of law "[i]f there is a substantial delay between the protected expression and the adverse action." *Id.*

The Eleventh Circuit has held that an interval of three to four months between the protected activity and termination is too attenuated to satisfy the causation element of a retaliation claim. *Id.* The temporal proximity must be "very close," and a four-month gap is not enough. *Walton v. Ga. Dep't of Comm. Affairs*, No. 1:21-cv-4164-MHC-CMS, 2022 U.S. Dist. LEXIS 145073, at *14 (N.D. Ga. May 20, 2022). In any event, the plaintiff must prove "that the desire to retaliate was the but-for cause of the challenged employment action." See Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 352 (2013).

In *Hughes*, the court held the retaliation claim failed when the plaintiff engaged in a protected activity in January, the adverse action occurred in July, and there was no other protected activity in-between. *Hughes* at 858. The Eleventh Circuit held the nearly six-month gap precluded the plaintiff's retaliation claim. *Id.*

In *Walton v. Ga. Dep't of Comm. Affairs*, the court held the plaintiff's retaliation claim failed, where, in one instance the plaintiff could not show that the defendant responsible for the adverse action was aware of the protected activity, and, in a

second instance where the plaintiff was terminated, the temporal gap exceeded three months. LEXIS 145073 at *13-14.

The Amended Complaint alleges that Plaintiff ostensibly engaged in a protected activity in March 2020. (Doc. 7 ¶¶ 32-33). Plaintiff alleges that she complained to Jacobs when she called her "very condescending" and "demanding" on March 13, 2020, and to her Mr. Sponseller about Jacobs' behavior (regarding the March 13 email and March 16 meeting) on March 17, 2020. (*Id.*). Just under nine months later, on December 3, 2020, Plaintiff says that Jacobs retaliated against her by requesting permission to terminate her. (*Id.* ¶ 33). Plaintiff met with human resources and Jacobs on December 7, 2020. In that meeting she chose to voluntarily resign so she would still be eligible for rehire.[15] (*Id.* ¶¶ 34-35). Plaintiff does not say there was a protected activity in the interim.

Accepting that these were protected activities— which they were not— Plaintiff's retaliation claims fail as a matter of law based on the nearly nine-month gap between the purported protected activities and the adverse employment action. The nine-month gap that Plaintiff relies on as the basis for her retaliation claim is too attenuated to establish a causal connection. Plaintiff's retaliation claims should be dismissed against all Defendants.

---

[15] Plaintiff makes the naked assertion that the Office's HR rep lied to her about former employees needing to be in good standing to be eligible for rehire. Plaintiff points to nothing to support this conclusory assertion.

## V.   PLAINTIFF'S   NON-EXISTENT   ALLEGATIONS   AGAINST DEFENDANT   CARR   DO   NOT   PLAUSIBLY   SUGGEST DISCRIMINATION OR RETALIATION

Plaintiff's allegations fail to describe how Defendant Carr had any involvement, save cursory mentions in Paragraphs 45 and 47 where Plaintiff claims that Carr "ratified Ms. Jacob's [sic] and/or other's actions toward Plaintiff…" or he "took no action to repudiate conduct…" (Doc. 7 ¶¶ 45,47). These allegations lack a scintilla of factual support and are quintessential examples of a conclusory statement.

Since Plaintiff fails to allege any purported facts from which the Court could infer that Carr was responsible for intentional discrimination or retaliation against Plaintiff, the claims against Carr should be dismissed.

## CONCLUSION

Based on the arguments and citations set forth above, each of Plaintiff's claims should be dismissed against all Defendants.

Respectfully submitted this 16th day of February, 2023.

HENEFELD & GREEN, P.C.

/s/ Noah Green
Noah Green
Georgia Bar No. 468138
*Attorney for Defendants*

3017 Bolling Way NE, Suite 129
Atlanta, Georgia 30305
(404) 841-1275
ngreen@henefeldgreen.com

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(D), this is to certify that the foregoing has been prepared using Book Antiqua 13-point font in compliance with Local Rule 5.1.

HENEFELD & GREEN, P.C.

/s/ Noah Green
Noah Green
Georgia Bar No. 468138
*Attorney for Defendants*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| CORINNE COLLINS, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. |
| | § | 1:22-cv-04392-WMR-JSA |
| | § | |
| OFFICE OF THE ATTORNEY | § | |
| GENERAL CHRISTOPHER M. CARR, | § | |
| STATE OF GEORGIA DEPARTMENT | § | |
| OF LAW, CHRISTOPHER M. CARR, | § | |
| and JULIE A. JACOBS, | § | |
| | § | |
| *Defendants*. | § | |

**CERTIFICATE OF SERVICE**

This is to certify that I have this day served counsel for the opposing

parties with a copy of *Defendants' Motion to Dismiss and Brief in Support*, by filing

same with the Clerk of Court using the CM/ECF system which will send

notification of such filing to all counsel of record.


This 16th day of February, 2023.

HENEFELD & GREEN, P.C.

/s/ Noah Green
Noah Green
Georgia Bar No. 468138
*Attorney for Defendant*

3017 Bolling Way NE, Suite 129
Atlanta, Georgia 30305
(404) 841-1275
ngreen@henefeldgreen.com