IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| CORINNE COLLINS,<br><br>    Plaintiff,<br><br>v.<br><br>OFFICE OF THE ATTORNEY<br>GENERAL CHRISTOPHER M.<br>CARR, STATE OF GEORGIA<br>DEPARTMENT OF LAW;<br>CHRISTOPHER M. CARR and JULIE<br>ADAMS JACOBS,<br><br>    Defendants. | Civil Action No.<br><br>1:22-cv-04392-WMR-JSA<br><br>JURY TRIAL DEMANDED |

**<u>PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT</u>**

Plaintiff Corinne Collins files this response in opposition to Defendants'
motion to dismiss (Dkt. 10) Plaintiff's First Amended Complaint ("FAC," Dkt. 7.)
10).  For the reasons set forth below, Plaintiff respectfully requests that Defendants'
motion be denied.

I.     <u>Argument and Citation of Authority</u>

       A. <u>Applicable Standard</u>

Defendants' motion is replete with efforts to provide the Court with off-the-record "facts" that Plaintiff's claims may not be "plausible" or that there may be "alternative explanations" for the conduct alleged.[1] Despite their attempts to offer the Court "some context" and/or repeatedly make entirely unsupported factual assertions, for purposes of their motion the facts as alleged in Plaintiff's FAC must be accepted as true and without reference to Defendants' "explanations." "To survive a motion to dismiss," Plaintiff's FAC need only "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Where, as here, a plaintiff "pleads factual content that allows the court to draw the reasonable inference" that a defendant engaged in intentional discrimination or retaliation, a Federal Rule of Civil

---

[1] (*See, e.g.,* Dkt. 10 at 8 ("obvious alternative explanations other than intentional discrimination"), 9 ("some context is useful to understand the email. This background … is offered only to explain conduct"), 9 n.2 "Jacobs had been told about an incident when Plaintiff had verbally accosted a co-worker … and made comments, such as 'are you stupid'"), 10 ("more plausible inference is that Jacobs's counseling of Plaintiff was unrelated to her race"), 11("other obvious reasons … are Jacobs's impression of Plaintiff's attitude at the meeting and the yelling incident that Jacobs was told Plaintiff was involved in"), 11 n. 4 (Mr. Sponseller "needed [Plaintiff's] assistance and her presence at the office more often than staff in some other divisions"), and 17 ("it is a far more reasonable inference that the office was given to an employee that enjoyed working at the office" and "an obvious alternate explanation is that Jacobs's policy was not based only on seniority, but rewarded merit, hard work, and dedication, among other legitimate factors").

Procedure 12(b)(6) motion should be denied.  *Id.* (citing *Twombly*, 550 U.S. at 556);

*City of Miami v. Wells Fargo & Co.,* 923 F.3d 1260, 1264 (11th Cir. 2019) (reversing

early dismissal, "[a]t this preliminary stage in the lawsuit, …. [t]he question for now

is whether, accepting the allegations as true, as we must, the City has said enough to

make out a plausible case—not whether it will probably prevail").   As detailed

below, Plaintiffs' FAC includes a "short and plain statement" of the facts supporting

her discrimination and retaliation claims confirming she is "entitled to relief," and

Defendants' motion should be denied.  Fed. R. Civ. P. 8(a)(2).

    B.  The FAC States Discipline and Termination Race Discrimination
        Claims.

      1.  Facts supporting Plaintiff's race discrimination claims.

Plaintiff is a Black female who began working for the Carr DOL in 2015 as a

paralegal.  During the more than four years that Plaintiff worked for Carr DOL

before Julie Jacobs (white) became the Deputy Attorney General over her division

Plaintiff was considered a strong performer with a quiet and professional demeanor.

(Dkt. 7 at ¶¶ 7, 12, 13, 14, 17.)   In fact, the Carr DOL followed a progressive

discipline policy outlining multiple steps for addressing employee performance or

behavioral concerns, and Plaintiff was never subject to written discipline. (*Id.* At ¶¶

15-16.)

When Jacobs began overseeing the division, Plaintiff experienced Jacobs engaging in racially hostile microaggressions.  For example, although Jacobs routinely greeted and spoke to white support staff, Jacobs declined to speak to or acknowledge Plaintiff in the office, even if Plaintiff spoke to Jacobs first.  Plaintiff further observed the same conduct by Jacobs toward other Black support staff but not toward white support staff.  (*Id.* at ¶ 18.)

Jacobs's pattern of racially disparate treatment was also reflected in the preferential treatment she gave to white support staff with respect to terms and conditions of employment.  For example, Jacobs chose to disregard the Carr DOL's practice of providing offices to paralegals on the basis of seniority and gave an office that came available to a more junior white paralegal, rather than Plaintiff who was next in line based on seniority.  (*Id.* at ¶ 19.) Jacobs allowed similarly situated white support staff members, including white paralegal Jessica Maurer, to work from home during the Covid-19 pandemic but required Plaintiff and other Black support staff to report to the office more often, and in requiring Plaintiff to report to the office acted in disregard of Plaintiff's remote work schedule approved by Plaintiff's attorney supervisor.[2]  (*Id.* at ¶¶ 20-21.)

---

[2] Jacobs's decision to give Plaintiff's office to a more junior white paralegal and Jacobs's race-based interference with Plaintiff's remote work schedule during

On March 13, 2020, while Plaintiff was on an FMLA-approved work schedule of 10 a.m.-2p.m. each workday, Jacobs directed Plaintiff to train all of the paralegals to efile "**today**" in a group email. Maurer responded by asking whether "2 or 2:30" worked, and Plaintiff replied that she was "leaving at 2. I have things I'm working on right now and I do not know how long it will take to finish them." Jacobs replied within two minutes, "I need you to do this today," and Plaintiff provided the training as required but was unable to leave work according to her FMLA-approved schedule. (*Id.* at ¶¶ 22-24.)

In accord with the Carr DOL's internal policies, which require an employee to complain about behavior perceived as "disrespectful or bullying … or intended to be intimidating, hostile, degrading or offensive," Plaintiff sent Jacobs an email the same day, noting she had completed the training but felt Jacobs's email "has a very condescending and demanding tone. It would have been very helpful if you would have said this ahead of time so I could have prepared to come in earlier or remain here at work a little later." In response, Jacobs told Plaintiff, "[y]our response and this email is unacceptable. I would like to speak with you on Monday at 10:00 in my office." (*Id.* at ¶¶ 24-26.) When Plaintiff met with Jacobs as required on March

Covid-19 are not standalone race discrimination claims. Plaintiff relies on these and other examples of race-based treatment as evidence of Jacob's discriminatory intent.

16, 2020, Plaintiff was "stunned by Ms. Jacobs's anger and open hostility and by the confirmation of Ms. Jacobs's racial stereotyping and both implicit and overt racial bias toward Plaintiff." (*Id.* at ¶ 26.)

For example, without asking Plaintiff any questions, affording Plaintiff an opportunity to respond, or otherwise ensuring an allegation of a "fight" with a white coworker be investigated, Jacobs told Plaintiff that Plaintiff had been in a "fight" in the office based on an allegation made by Maurer. Plaintiff maintains no "fight" occurred. Nevertheless, Mauer's allegations about a "fight" with Plaintiff were accepted as true by Jacobs, Jacobs "reprimanded" Plaintiff, and Maurer was not subject to Jacobs's hostility, threats, or discipline based on an alleged "fight." (*Id.* at ¶ 27.)

Moreover, although Plaintiff had not yet been permitted to say or said a word in response to Jacobs's accusations, Jacobs told Plaintiff she is "so hostile," has an "attitude," and that her "general demeanor right now" is unacceptable. Jacobs's accusations further confirmed both the pattern of disparate treatment and racial hostility Plaintiff had been experiencing and Jacobs's racial stereotyping of Plaintiff – who had never previously been counseled or disciplined – as an angry Black

woman.[3] (*Id.* at ¶¶ 28-30, 16.)   Jacobs also told Plaintiff she "better adjust her attitude," said that Plaintiff's "attitude is unprofessional," refused to permit Plaintiff to talk when Plaintiff attempted to explain that the reason she sent the email to Jacobs was related to her approved FMLA, and abruptly ended the meeting with "I don't care if you like me" and "you have to be professional."  (*Id.* at ¶ 31.)  Carr DOL admits that Jacobs's meeting with Plaintiff was a "counseling" and "reprimand."[4] (*Id.* at ¶ 32.)

Jacobs's disparate treatment of Plaintiff (as compared to similarly situated white paralegals) continued after Plaintiff's March 2020 meeting with Jacobs and complaints about Jacob's race discrimination to attorney supervisors, including her interference with Plaintiff's approved remote work schedule, the requirement that Plaintiff report to the office more often than similarly situated comparators, and

---

[3] Carr DOL and Carr likewise failed to provide Jacobs or its other managers with any training regarding racial stereotyping or otherwise ensure that Jacobs was properly trained to avoid race discrimination or retaliation against employees.  (*Id.* at ¶¶ 26-30.)

[4] This discipline immediately followed Plaintiff's complaint pursuant to Carr DOL's internal harassment policy, and Jacobs knew or should have known Plaintiff had a right to complain pursuant to the policy.  (*Id.* at ¶ 32.)  Although Defendants assert that Plaintiff relies on her email to Jacobs as a "protected complaint of race discrimination," (Dkt. 10 at 3), Plaintiff's protected activities were her complaints on or after March 17, 2020 and her filing of an EEOC charge. (*Id.* at 33-34, 2.)

Jacobs's more frequent contact with Plaintiff when Plaintiff was working remotely to ask Plaintiff what work she was performing. (*Id.* at ¶¶ 19-21, 33, 35.)

Despite Plaintiff's continued performance of her work as directed and the absence of any further progressive discipline steps addressed with Plaintiff during the ongoing pandemic, Jacobs made the decision to terminate Plaintiff's employment and contacted Human Resources on December 3, 2020, according to the Carr DOL's EEOC submission. (*Id.* at ¶¶ 36-37.)   Jacobs's decision was motivated by discrimination (and/or retaliation as addressed below) and was also in violation of the Carr DOL's policies for addressing employee behavior and/or performance concerns.  Jacobs's decision to terminate Plaintiff was also in disregard of the Carr DOL's progressive discipline policy regularly applied to non-Black support staff in the division. (*Id.* at ¶ 37.)

During the December 7, 2020 termination meeting with Jacobs, Human Resources, and Sponseller, Jacobs told Plaintiff she was being "terminated" for alleged "problems with your performance."   Sponseller, Plaintiff's attorney supervisor, did not speak during the meeting. (*Id.* at ¶ 38.) Defendants' Human Resources representative then falsely told Plaintiff that unless Plaintiff stated she was "resigning," Plaintiff would "forever" have an "involuntary mark" on her employment that would impact Plaintiff's ability to work for the State of Georgia in

the future.   Defendants knew that this threat was untrue but had prepared a "resignation" statement for Plaintiff in advance of the meeting.   In response to this threat that she would be unable to ever work for the State of Georgia unless she resigned, Plaintiff provided a resignation.   That same day, Sponseller sent a group email to Carr DOL stating that Plaintiff "was terminated today."  (*Id.* at ¶ 39.)

Defendants further provided Plaintiff with a Georgia Separation Notice falsely stating that the "reasons for separation" were "voluntary resignation."   The notice advised Plaintiff that Georgia law required her to take this separation notice to the Department of Labor when filing a claim for unemployment benefits, and when Plaintiff did, her right to unemployment compensation was denied because she "resigned."[5] (*Id.* at ¶¶ 39-41.) As detailed further below, Defendants' efforts to falsely portray Plaintiff's race-based termination as a "resignation" caused further harm to Plaintiff and confirms Defendants' intent to hide the true discriminatory (and retaliatory) reason for Jacobs's decision.

According to Defendants, only four support staff, including Plaintiff, were terminated during Plaintiff's employment in the division, and all four were Black.

---

[5] Defendants did not force white support staff (or support staff who had not engaged in protected activity) and who were terminated to instead state they "resigned" or provide them with false separation notices stating the reason for separation was "resignation."  (*Id.* at ¶ 40.)

Defendants also admit that under Jacobs's leadership and until the date of Plaintiff's termination, only two employees were terminated, including Plaintiff, and both were Black.  Jacobs also made the decision to terminate the other Black employee in 2020. (*Id.* at ¶ 44.)

>    2.  These facts, accepted as true, meet Plaintiff's minimal burden of articulating her discrimination claims.

The FAC alleges sufficient facts to articulate race discrimination claims based on Defendants' discipline and termination of Collins.  Defendants' motion to dismiss those claims initially relies on their (and their lawyers') attempts to offer various "explanations" for Jacobs's pattern of racially discriminatory behavior that could be "more plausible,"[6] but the standard is not one which permits the weighing of Plaintiff's factual allegations against possible theories to determine which are "more" plausible. *Ashcroft,* 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable….").

Here, the FAC's allegations confirm: a) Plaintiff is Black and had been regarded as both professional in demeanor and a strong performer in the division for multiple years, b) when Jacobs, the division's new white Deputy Attorney General,

---

[6] (*See* Dkt. 10 at 10.)

was promoted Plaintiff suddenly began to experience Jacobs's racial microaggressions, including failure to greet or even acknowledge Plaintiff and other Black employees while greeting and speaking with white employees; c) Plaintiff observed Jacobs's more favorable treatment of white staff comparators (including Maurer) with respect to the terms and conditions of her employment, d) Plaintiff observed Jacobs's race-based, disparate decision to subject Plaintiff to discipline, an adverse employment action, based on Maurer's allegations of a "fight" – which Plaintiff denies – without affording Plaintiff an opportunity to respond or otherwise investigating the allegations; e) Plaintiff observed Jacobs's racial stereotyping of Plaintiff (when Plaintiff had not yet spoken in their meeting) and her decision to subject Plaintiff to adverse discipline for being "so hostile" and having "an attitude;" f) Jacobs thereafter continued to subject Plaintiff to racially disparate terms and conditions of employment, including refusing to permit Plaintiff to work her agreed remote schedule and requiring Plaintiff and other Black employees to report to the office more often than their white counterparts during a pandemic, g) without following any of the required progressive discipline steps and despite the absence of performance issues, Jacobs decided to terminate Plaintiff for purported "performance," a pretext for discriminatory intent; h) Defendants sufficiently threatened Plaintiff such that Plaintiff felt forced to falsely state the termination was

a "resignation," and i) Defendants provided Plaintiff with a separation notice falsely stating the separation was for "voluntary resignation" while at the same time emailing division employees and later advising the EEOC that Plaintiff was "terminated."[7]   These allegations are "enough factual matter (taken as true) to suggest intentional race discrimination" for purposes of Plaintiff's discipline and termination claims.  *Davis. v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 974 (11th Cir. 2008) (explaining "a Title VII complaint need not allege facts sufficient to make out  a classic *McDonnell Douglas* prima facia case"); *Gomez v. City of Doral*, No. 21-11093, 2022 WL 19201, at *2 (11th Cir. Jan. 3, 2022) (stating that "[t]he pertinent question, as always, is whether [plaintiff's] complaint provides enough factual matter (taken as true) to suggest intentional ... discrimination[ ]"); *Jenkins v. Nell*, No. 20-13869, 2022 WL 621147, at *5 (11th Cir. Mar. 3, 2022) ("A plaintiff may establish a convincing mosaic by pointing to evidence that demonstrates, among other things, (1) suspicious timing, ambiguous statements, or

---

[7] (FAC at ¶¶ 7, 14-45, 47.)  The FAC further confirms Jacobs's termination of only two employees in 2020, both Black, and the Carr DOL's termination of only four support staff during Plaintiff's tenure, all Black.  (*Id.* at ¶ 44.)

other information from which discriminatory intent may be inferred, (2) 'systematically better treatment of similarly situated employees,' and (3) pretext.").[8]

---

[8] Defendants' caselaw is distinguishable. For example, in *Kavienpour v. Bd. of Regents of the Univ. Sys. of Ga.*, the court dismissed plaintiff's gender discrimination claims where the complaint included facts about the plaintiff's own drug-related conduct, positive drug tests, and DUI, but no allegations that any male residents were similarly situated, finding plaintiff's transgressions were an obvious non-gender-related explanation. No. 1:20-cv-152-MLB, 2021 WL 2635854, *8-9 (N.D. Ga. Mar. 29, 2021); *Henley v. Turner Broadcasting System, Inc.*, 267 F. Supp.3d 1341 (N.D. Ga. 2017), involved pattern and practice, individual, and class claim allegations regarding compensation and advancement where insufficient facts were alleged to suggest similarly situated comparators were treated more favorably. *See also Patterson v. Georgia Pacific, LLC*, 38 F.4th 1336, 1354 (11th Cir. 2022) (noting fact that an employee received no warnings pursuant to the "normal policies and procedures" of its human resources practices "establishes a genuine issue of material fact on pretext" at advanced summary judgment stage); *Howard v. Edible Peace Patch Project, Inc.,* No. 8:17-CV-2170-T-33JSS, 2017 WL 10294871, at *3 (M.D. Fla. Dec. 8, 2017) (explaining defendants "contend that the circumstantial allegations of discrimination in the Complaint, even taken as true, do not support Howard's discrimination claim, but the "Court disagrees. … Taking the allegations as true and favoring Howard with all reasonable inferences, the Court finds Howard has sufficiently alleged that [defendants] treated Howard less favorably than non-black employees because they held stereotypical and derogatory views about black women," explaining plaintiff "alleges that she was put on a corrective action plan because of racially-tinted views about her personality being 'aggressive'"); *Robinson v. City of Atlanta*, No. 1:10-cv-02036-WSD-AJB, 2010 WL 11440788, at **6-7 (denying motion to dismiss race and sex discrimination claims, rejecting defendant's argument that "Plaintiff did not identify a single comparator who was treated more favorably," where plaintiff alleged assumed decisionmaker "is Caucasian and that he displayed discriminatory animus toward black women with his 'angry black woman' comments," plaintiff was terminated without "warning or an explanation," and there were "allegations suggesting racial and sexual animus" on the part of the decisionmaker).

Similarly, Defendants' challenges that race-based disparate conduct or racial hostility reflected in Jacobs's behavior toward Black and white employees, decisions regarding office assignments, and/or granting permission to work remotely are not sufficiently "adverse" to form the basis for actionable discrimination claims are red herrings, as Plaintiff's race discrimination claims are based on Defendants' adverse actions in admittedly disciplining Plaintiff in March 2020 and terminating her employment.[9]   Defendants' arguments that these allegations in the FAC are "conclusions" for which plaintiff must allege "valid comparator[s]" inaccurately assume they are standalone claims that "must" also be supported by "the existence of a similarly-situated employee." (Dkt. 10 at 14-17.)   Instead, Plaintiff relies on these facts as circumstantial evidence of discriminatory intent supporting a convincing mosaic for purposes of the two discrimination claims asserted.[10]   And

---

[9] For purposes of Plaintiff's claims that her termination was the result of intentional race discrimination, Plaintiff relies on Defendants' conduct forcing Plaintiff to state she resigned and providing her with a separation notice falsely stating the reasons for separation were "voluntary resignation" as evidence of the pretextual nature of the termination decision.   Plaintiff does not contend that the unemployment events provide a standalone discrimination claim, but as addressed below, does maintain that Defendants' post-employment efforts to prevent Plaintiff's recovery of state benefits were adverse actions motivated by retaliatory intent.

[10] The Eleventh Circuit also recognizes that a plaintiff need not produce a comparator to prove a discrimination claim using the convincing mosaic analysis. *Lewis v. City*

Defendants' motion concedes that "these paragraphs contain accusatory language about 'angry black women,' and racial hostility" and "the factual allegations are only … capable of showing, at best, conceivable discrimination," which the Court must accept as true for purposes of Defendants' motion.[11]  (Dkt. 10 at 14.)

Finally, Defendants' contention that Plaintiff has not "alleged intentional race discrimination in the making or enforcement of a contract under §1981" is unsupported and ignores the plain language and long-established scope of §1981. (Dkt. 10 at 17-18) "Make and enforce contracts" includes "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. §

---

*of Union City, Ga.*, 934 F.3d 1169, 1185 (11th Cir. 2019).  The absence of a comparator was the central issue in the *Smith v. Lockheed-Martin Corp* decision that articulated the standard. 644 F.3d 1321, 1328 (11th Cir. 2011) ("Accordingly, the plaintiff's failure to produce a comparator does not necessarily doom the plaintiff's case.").

[11] *See also Foster v. Summer Vill. Cmty. Ass'n, Inc.,* 520 F. Supp. 3d 734, 745 (D. Md. 2021) (denying summary judgment on termination claim based on evidence including "Gunn expressed favoritism towards her white employees (ECF No. 19-17 at 13), and cycled through black temporary employees until the temp agency sent over a white employee who exhibited the "right temperament."""); *Curry v. Devereux Foundation*, 541 F. Supp. 3d 555, 561–62 (E.D. Pa. 2021) (denying motion to dismiss, describing the damage and "perniciousness" of the "angry black woman" stereotype, explaining "[f]or this reason, courts have held that the invocation of the "Angry Black Woman" stereotype may serve as evidence of discriminatory animus").

1981(b). "Section 1981 thus prohibits a range of material adverse actions in private employment because of race." *Willmore-Cochran v. Wal-Mart Assocs., Inc.,* 919 F. Supp. 2d 1222, 1233 (N.D. Ala. 2013) (cit. omitted); *see also Cox v. Fulton Cnty. Sch. Dist.*, No. 119CV04520JPBRGV, 2020 WL 3046092, at *9 (N.D. Ga. May 22, 2020), *report and recommendation adopted*, No. 1:19-CV-04520-JPB, 2020 WL 3046096 (N.D. Ga. June 8, 2020) (§1981 encompasses employment race discrimination and retaliation claims).

    C.   <u>Plaintiff's FAC States Retaliation Claims</u>.

        1.   Additional facts supporting Plaintiff's retaliation claims.

After the March 16 discipline imposed by Jacobs, Plaintiff complained to her attorney supervisor Sponseller about "Jacobs's racially hostile and disparate treatment" on March 17, 2020.  Sponseller was required under Carr DOL and State of Georgia policies to report Plaintiff's concerns for investigation, and Carr DOL, Carr and Jacobs knew or should have known of Plaintiff's complaint of race discrimination.[12] (FAC at ¶ 33.)  In response to Plaintiff's EEOC Charge, the Carr

---

[12] *Monsrud v. Regenerative Orthopaedics & Spine Inst., P.C.*, No. 1:20-CV-1571-AT-WEJ, 2020 WL 12654451, at *4 (N.D. Ga. Sept. 9, 2020*), report and recommendation adopted sub nom., Monsrud v. Regenerative Orthopaedics*, No. 1:20-CV-1571-AT, 2020 WL 12654449 (N.D. Ga. Sept. 29, 2020) ("*Twombly*'s plausibility standard does not prevent a plaintiff from pleading facts based upon information and belief, " 'where the facts are peculiarly within the possession and

DOL falsely claimed that when Plaintiff complained to Sponseller, he told her "she should stop drawing negative attention to herself."  Sponseller's response to Plaintiff's protected complaint was not to tell Plaintiff her concerns would be investigated; instead, he responded to Plaintiff's discrimination complaint by telling her that he "could not protect her if the office decided to take action against her including termination."  Plaintiff also complained to other attorney supervisors about Jacobs's discriminatory treatment.  (*Id.* at ¶¶ 33-35.)  None of Plaintiff's protected complaints were investigated, neither Sponseller nor any other of Defendants' agents took any action to protect Plaintiff from the discrimination or retaliation, and no action was taken by Defendants to respond to or otherwise address them.  As such, the Carr DOL and Carr ratified the discriminatory and retaliatory treatment of Plaintiff.  (*Id.* at ¶¶ 35, 45, 47.)

As detailed above, after Plaintiff's discrimination complaints Defendants retaliated against Plaintiff by refusing to allow Plaintiff to work her approved remote schedule and otherwise subjecting her to disparate terms and conditions of employment because of her protected activity, terminating Plaintiff's employment for alleged "performance" without basis and in disregard of applicable progressive

---

control of the defendant' or 'where the belief is based on factual information that makes the inference of culpability plausible.' " (cit. omitted).

discipline requirements, and attempting to cover up the termination decision by threatening Plaintiff and forcing her to provide a false statement that she resigned. (*Id.* at ¶¶ 20-21, 37-40.)

Plaintiff's unemployment claim was initially denied by the Georgia based on her alleged "resignation." As a result of Defendants' retaliatory and pretextual attempt to designate Plaintiff's termination a "resignation," and Defendants' continuing retaliatory intent, Plaintiff was forced to file an appeal of the denial of her right to state unemployment benefits and incur related attorney's fees. After a hearing, on December 22, 2021 an administrative hearing officer reversed the denial of benefits, finding Defendants "initiated the separation by indicating that [Plaintiff] would no longer have a job." Undeterred, and with the additional knowledge that Plaintiff's EEOC charge had been filed and was pending against them, Defendants further retaliated by filing the Carr DOL's own appeal of this December 22, 2021 determination, this time asking the Georgia DOL (their client) to reopen the hearing and allow Defendants to present more evidence[13] to prevent and/or delay Plaintiff's right to state benefits to which she was entitled. Plaintiff and her counsel were required to attend a second hearing in January 2022, and the administrative hearing

---

[13] Around the same time, Defendants admitted to the EEOC that Plaintiff's employment had been terminated. (*Id.* at 37.)

officer found Carr DOL "failed to show good cause to reopen the hearing." Defendants' retaliatory interference with her right to state benefits resulted in a nearly one-year delay of Plaintiff's receipt of unemployment compensation during a pandemic, further causing financial hardship and emotional distress to Plaintiff. (*Id.* at ¶¶ 8, 39-45, 47.)

        2.  These facts meet Plaintiff's burden of articulating her retaliation claims.

Just as with Plaintiff's discrimination claims, the FAC 's retaliation claims need not be alleged with facts sufficient to prove a prima facie case; rather, Plaintiff again must only allege sufficient facts to "plausibly" suggest retaliation. *Uppal v. Hosp. Corp. of Am.*, 482 F. App'x 394, 396 (11th Cir. 2012). Plaintiff sufficiently alleges Defendants retaliated against after she complained of race discrimination, and Defendants' interference with her remote work schedule, singling her out for oversight, termination of her employment, and knowingly false efforts to prevent and/or delay her recovery of state-owed benefits are adverse employment actions for purposes of her claims.[14] The pattern of retaliatory behavior, coupled with

---

[14] Retaliation claims require only a showing "that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington*, 548 U.S. at 68; *Cox v. Fulton Cnty. Sch. Dist.,* No. 119CV04520JPBRGV, 2020 WL 3046092, at *10 (N.D. Ga. May 22, 2020), *report and recommendation adopted,* No. 1:19-CV-04520-JPB, 2020 WL 3046096 (N.D.

Sponseller's immediate statement in response to Plaintiff's protected activity that he "could not protect her" if action was taken against her and Defendants' complete failure to investigate her complaints, are sufficient to state claims for relief.

Defendants' motion to dismiss Plaintiff's retaliation claims relies on the alleged absence of "close temporal proximity," an argument that ignores the pattern of adverse treatment here. (Dkt. 10 at 21.)   Moreover, as the Eleventh Circuit explains:

> the causal element for a claim of retaliation can be proved by circumstantial evidence:  We do not construe the "causal link" in the [retaliatory discharge] formula to be the sort of logical connection that would justify a prescription that the protected participation in fact prompted the adverse action. Such a connection would rise to the level of direct evidence of discrimination, shifting the burden of persuasion to the defendant. Rather, we construe the "causal link" element to require merely that the plaintiff establish that the protected activity and the adverse action were not wholly unrelated.

*Goldsmith v. Bagby Elevator Co.,* 513 F.3d 1261, 1277–78 (11th Cir. 2008) (cit. & quot. Omitted).   Here, Plaintiff alleges that immediately following her protected

---

Ga. June 8, 2020) (explaining actionable conduct also "extends beyond workplace-related or employment-related retaliatory acts and harm" under the *Burlington* standard).   In addition, Defendants' contention that Plaintiff lacks "standing" to challenge the denial of unemployment benefits because she eventually received them is likewise without basis.   Denying a former employee state-provided and needed benefits during a pandemic for more than nine months caused harm, including that Plaintiff was forced to incur attorneys' fees in connection with Defendants' baseless appeal, and Plaintiff is likewise entitled to seek to recover interest related to delay.

activity and Sponseller's responsive admission that he could not "protect" her, Defendants' pattern of retaliation began and continued post-termination. In short, the FAC's allegations at minimum establish that Plaintiff's protected activity and the adverse actions "were not wholly unrelated."[15] *Goldsmith*, 513 F.3d at 1278; *see also Taylor v. Cardiovascular Specialists, P.C.,* No. 11-4521-TCB-RGV, 2013 U.S. Dist. LEXIS 186090, at *97-98 (N.D. Ga. Dec. 11, 2013) ("A retaliation plaintiff may thus 'rely upon a broad array of evidence' to 'illustrate a "causal link" for the purposes of establishing retaliation,'" including evidence of "heightened scrutiny, negative criticism, differential treatment or violation of standard internal protocol

---

[15] Defendants' reliance on *Walton v. Georgia Dep't of Cmty. Affs.*, No. 1:21-CV-4164-MHC-CMS, 2022 WL 3337405, at *5 (N.D. Ga. May 20, 2022), *report and recommendation adopted*, No. 1:21-CV-4164-MHC-CMS, 2022 WL 3337406 (N.D. Ga. July 6, 2022), *appeal dismissed*, No. 22-12616-HH, 2022 WL 18539948 (11th Cir. Sept. 14, 2022), is misplaced. First, *Walton* confirms that a four-month gap "is not enough" but only in the "absen[ce of] any other allegations to support an inference of retaliation." *Id.* Second, the plaintiff in *Walton* failed to include any allegation that the individuals responsible for denial of her leave request and for her termination had knowledge of her protected opposition. *Id.* In contrast, Plaintiff alleges Defendants knew or should have known of her protected activities, failed to conduct any investigation of same although policy required investigation, and/or ratified the continued discriminatory and retaliatory conduct. *See also Wagner v. Lee Cnty.*, 678 F. App'x 913, 923–24 (11th Cir. 2017) (to establish a sufficient causal connection plaintiff must show the protected activity and adverse action are "related," and showing the decisionmaker was aware of the protected activity (or showing alleged lack of awareness is not "unrebutted") is sufficient evidence of that relationship).

and procedures.") (quot. omitted); *Joyner v. City of Atlanta*, No. 1:16-CV-1780-TWT-LTW, 2018 WL 1442931, at *5 (N.D. Ga. Feb. 23, 2018), *report and recommendation adopted*, No. 1:16-CV-1780-TWT, 2018 WL 1427941 (N.D. Ga. Mar. 22, 2018) (denying motion to dismiss retaliation claim despite 8-year gap between protected activity and failure to promote, Plaintiff's allegations that city deviated from its procedures, that plaintiff had been promoted multiple times before his complaint, and abrupt change in plaintiff's schedule after the complaint were sufficient to show inference of causation).  For all of these reasons, Defendants' motion to dismiss Plaintiff's retaliation claims should be denied.

D. <u>Defendant Carr Should Not Be Dismissed</u>.

Defendants' motion seeks dismissal of Defendant Carr, asserting the claims against him "lack a scintilla of factual support," but offers no authority or even citation to the FAC.  However, the FAC specifically details support for the claims asserted against each Defendant, including Carr.  (*See also* FAC at ¶¶ 9 (Carr's claimed "mission"), 11 (executive leader to whom Jacobs's reported), 15 (knowledge of progressive discipline policy and noncompliance with same), 30 (failure to provide training and/or ensure leaders properly trained to prevent discrimination and retaliation), 33-35 (disregard for reporting of complaints of discrimination and investigation requirements, failure to take any action), 37

(termination of employment in violation of department policy), 39-43 (disregard of discrimination and nonretaliation policies, false threats to "resign" pretextual and intended to retaliate), 45 and 47 (ratification of unlawful discrimination and retaliation).); *Monsrud, 2*020 WL 12654451 at *4.

II.     Conclusion

For the reasons set forth above, Plaintiff respectfully requests that Defendants' motion be denied.

Respectfully submitted, this 2nd day of March, 2023.

> /s/Tracey T. Barbaree
> Tracey T. Barbaree
> GA Bar No. 036792
> Beth A. Moeller
> GA Bar No. 100158
> MOELLER BARBAREE LLP
> 1175 Peachtree St. NE, Suite 1850
> Atlanta, GA 30361
> Phone: 404.748.9122
>
> *Attorneys for the Plaintiff*

Local Rule 5.1(B) Certification

Counsel for Plaintiff certifies that this pleading was prepared in Times New Roman 14 point font.

> /s/Tracey T. Barbaree
> Counsel for Plaintiff

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of Plaintiff's Response in Opposition to Defendants' Motion to Dismiss Plaintiff's First Amended Complaint  has been served on Defendants' counsel of record by electronic filing as follows:

Noah Green
ngreen@henefeldgreen.com

This 2nd day of March, 2023.

/s/ Tracey T. Barbaree
Tracey T. Barbaree