IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| CORINNE COLLINS,<br><br>*Plaintiff*,<br><br>v.<br><br><br>OFFICE OF THE ATTORNEY GENERAL CHRISTOPHER M. CARR, STATE OF GEORGIA DEPARTMENT OF LAW, CHRISTOPHER M. CARR, and JULIE A. JACOBS,<br><br>*Defendants*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No.<br>1:22-cv-04392-WMR-JSA |

**DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO THE MOTION TO DISMISS**

COME NOW, Defendants Christopher Carr, Julie Jacobs, and the Office of the Attorney General for the State of Georgia, with their Reply to Plaintiff's Response in Opposition to their Motion to Dismiss.

The arguments espoused and the factual basis alleged in Plaintiff's Response fall short of moving the needle from the mere "possibility" of liability to "plausibility." Plaintiff's description of the factual allegations in the Amended Complaint only bolsters the argument in the Motion to Dismiss that an inference of intentional discrimination is a bridge too far.

Plaintiff argues that Ms. Jacobs subjected her to "racially hostile microaggressions" such as not greeting her, providing an office to a "junior white

paralegal," and requiring Plaintiff to report to the office during the pandemic where other white paralegals worked from home more often. (Pl.'s Resp., Doc. 11 at 4). Plaintiff concedes these are not "standalone" discrimination claims. (*Id.* at n. 2).

Instead, Plaintiff relies on the March 13 email exchange and the March 20 counseling meeting as her most persuasive evidence that Jacobs discriminated against her. (*Id.* at 5-7). The allegations in the Amended Complaint, however, do not support the inference of discrimination that Plaintiff asks the Court to draw. First, the email exchange was racially neutral. It amounted only to the head of the department directing an employee to perform a task. Plaintiff's email response, describing Ms. Jacobs's directive as "very condescending" and "demanding" is the only abnormal occurrence. "Insubordination" is defined as "an act of disobedience to proper authority." Black's Law Dictionary (10th ed. 2014). The only reasonable inference to be drawn from this exchange and Ms. Jacobs's response is that Plaintiff was asked to attend a job counseling meeting based on the language she used in her email to Ms. Jacobs; not intentional race discrimination.

Plaintiff claims that her email that referred to Ms. Jacobs as "very condescending" and "demanding" were made "pursuant to Carr DOL's internal harassment policy." (*Id.* at n. 4). But Plaintiff never mentioned the policy in her email nor did she refer to any perceived harassment. What she did do is criticize the head of the department for directing her to perform a task. The claim that the

email invoked the anti-harassment policy is logically flawed. It is both objectively and subjectively unreasonable to believe that Ms. Jacobs's email that directed Plaintiff to provide training was intimidating, hostile, degrading, or offensive. (See Doc. 11 at 5). Equally unreasonable is the argument that Plaintiff's email in response was being made under the harassment policy. Apart from Plaintiff's conclusory assertion that the email was sent under the policy, there are no factual allegations to support this claim. And more to the point, Plaintiff does not contend that the email made any suggestion of intentional race discrimination. Nor does Plaintiff allege that she faced any punishment after the March 16 meeting with Ms. Jacobs.

Plaintiff also makes amorphous references to complaints made to "other attorney supervisors," ostensibly to explain the nine-month temporal gap between the purported complaint to her supervisor and her resignation. (Doc. 7 ¶ 34; Doc. 11 at 7). These references to "other," unidentified supervisors fall well short of allegations that should be accepted. *Iqbal* and *Twombly* both proscribe reliance on "unwarranted deduction of fact" and require that a complaint "must contain sufficient factual matter" to move the needle from "possibility" to "plausibility." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-679 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Plaintiff admits in her Amended Complaint that her "attorney supervisor" was Mr. Sponseller. (Doc. 7 ¶ 23). Even if the assertion is accepted— which it should not be— making accusations about Ms. Jacobs to

unknown “other[s],” that was not *her supervisor* and who were not decision-makers in Plaintiff’s line of reporting, is both inappropriate and ineffectual to state a claim.

A plaintiff need not present meticulous detail to survive a motion to dismiss, but where an amorphous “fact” is provided as support for a legal conclusion— i.e., that the plaintiff engaged in protected activities within a nine-month gap— the Court may discard them, not because of a credibility determination, but because the conclusory nature “disentitles them to the presumption of truth.” *Iqbal*, 556 U.S. at 681. Here, Plaintiff attempts to explain the lack of a causal link through a conclusory statement couched as a purported fact. The accusations Plaintiff contends she made about Ms. Jacobs to “other” unidentified “attorney supervisors,” are not entitled to the presumption of truth.

Setting aside the conclusory allegations about the “others,” after Plaintiff’s purported complaint to her supervisor on March 17, 2020, Plaintiff claims that there were “microaggressions,” but no other adverse employment actions. (Doc. 11 at 4, 8). Plaintiff admits that the “macroaggressions” were not “standalone race discrimination claims.” (*Id.* at n. 2). It was nine months after the purported complaint that Plaintiff was given the option to resign in place of termination.

Plaintiff also relies on the purported failure to follow a progressive discipline policy as evidence of discrimination. (Doc. 7 ¶ 37). The Eleventh Circuit has held, however, that a deviation from a company policy is not itself evidence of discrimination. *See Mitchell v. USBI Co.*, 186 F.3d 1352, 1355-56 (11th Cir. 1999).

Plaintiff's bear allegation that "non-black support staff" were treated differently is a quintessential example of a conclusory statement that is not entitled to the presumption of truth. (Doc. 7 ¶ 37). Broad statements about racial groups that lack specificity are not acceptable comparators. *Henley v. Turner Broad. Sys.*, 267 F. Supp. 3d 1341, 1352 (N.D. Ga. 2017). In *Henley*, the court held that the complaint's generic reference to "other Caucasian executive assistants" was not enough. *Id.* at 1353. The *Henley* court discusses other cases in which allegations about broad racial groups or vague contentions against an individual identified only by their race were rejected. For example, in *Toomer v. Savannah Rose of Sharon,* LLC, the court dismissed a claim where the plaintiff's comparator was vaguely described as a "less qualified white applicant" who was hired for a job he applied for.[1] In *Arafat v. Sch. Bd. Of Broward Cnty.*, the court dismissed a discrimination claim where the complaint made broad references to comparators that were "male and younger" and whose jobs "required equal skill, effort, and responsibility."[2] Courts after *Henley* have also agreed. In *Laster v. Ga. Dept. of Corr.*, the court held that using the generic term "female officers" to describe comparators was insufficient.[3] In other words, Plaintiff's use of broad race-based groups such as "non-black support staff," as a comparator is insufficient detail for the Court to conclude that intentional race discrimination is plausible.

[1] Case No. 4:12-cv-057, 2012 U.S. Dist. LEXIS 37900, 2012 WL 952755 (S.D. Ga. Mar. 20, 2012).
[2] 549 F. App'x 872, 874 (11th Cir. 2013).
[3] 2022 U.S. Dist. LEXIS 174187, at *11 (M.D. Ga. Sept. 23, 2022); 2022 WL 4450485, at *11 (M.D. Ga. Sept. 23, 2022).

Plaintiff contends that a separation notice "falsely" stated that Plaintiff voluntarily resigned. (Doc. 11 at 9). And while Plaintiff admits that she did resign, she claims that she only did so because "Defendants sufficiently threatened [her]." (Doc. 11 at 11-12). The allegations in the Amended Complaint, however, do not describe Plaintiff being "threatened" or placed under duress. Rather, the Amended Complaint describes Plaintiff being told a fact that is universally accepted in the private and public sectors; namely, if you are terminated from a position, you are generally ineligible for rehire. On the other hand, when an employee resigns, they are typically eligible to be rehired. The Court is permitted to "draw on its judicial experience and common sense" in determining whether Plaintiff's allegations state a claim. *Iqbal* at 679. Plaintiff repeatedly claims that it is false that she resigned and contends that she was threatened. These statements lack veracity and are unsupported by the Amended Complaint's factual allegations, save for legal conclusions and unwarranted deductions of fact. For example, Plaintiff nakedly refers to "other white support staff" as the basis for her claim that asking for resignation in place of termination was discriminatory. (Doc. 7 ¶ 40).

Regarding temporal proximity, Plaintiff cites *Goldsmith v. Bagby Elevator Co.*[4], quoting language that supports Defendants' Motion to Dismiss. (Doc. 11 at 20). As the *Goldsmith* court points out, the temporal causal link is *required* to show that protected activity and adverse action were not wholly unrelated. (*Id.*). This is precisely the point. The Eleventh Circuit has held, as a matter of law, that gaps of

---

[4] 513 F.3d 1261 (11th Cir. 2008).

three to four months between a protected activity and adverse action are too attenuated to state a claim for retaliation. *See, e.g., Hughes v. Walmart Stores E.*, 846 Fed. App'x 854, 858 (11th Cir. 2021). The Motion to Dismiss discusses several cases that have echoed the Eleventh Circuit's holding on temporal proximity. (Doc. 9 at 21-22). The reasonable inference to be drawn from the nine-month gap between the purported protected activity and Plaintiff's resignation is that no causal link is established in the Amended Complaint.

Plaintiff asserts that she has made sufficient allegations about Attorney General Carr to survive a Motion to Dismiss. (Doc. 11 at 22-23). But there are no factual allegations in the Amended Complaint from which the Court could infer that Mr. Carr even knew of Plaintiff. Plaintiff asks the Court to infer that it is plausible that Mr. Carr is individually liable for intentional discrimination where, according to the Amended Complaint, he admittedly was not involved in any of the purported microaggressions, was not complained to, and was not involved in the decision to ask for Plaintiff's resignation. Nor does the Amended Complaint allege that Mr. Carr (or Ms. Jacobs for that matter) had any involvement in the handling of unemployment claims.

All the allegations against Mr. Carr are conclusory and lack sufficient factual support from which the Court could infer that Plaintiff has alleged intentional race discrimination against him. For example, Plaintiff alleges that Mr. Carr is liable solely because he is the "Executive Officer and Attorney General for Georgia." (Doc. 7 ¶ 45). This does not make him liable for racial discrimination and retaliation, where the

Amended Complaint does not contain factual allegations that he had any involvement with Plaintiff whatsoever. Plaintiff's allegations about Mr. Carr individually do not state a claim for race discrimination or retaliation and should be dismissed.

Plaintiff's Response to Defendants' Motion to Dismiss does not support an inference that Plaintiff was discriminated against because of her race or retaliated against. The inferences that Plaintiff asks the Court to draw are largely illogical or depend on leaps of logic that do not support the legal conclusions. For example, the March 13, 2020, email exchange between Plaintiff and Ms. Jacobs, and the March 16, 2020, counseling meeting that Plaintiff relies on as her most persuasive evidence of discrimination, do not support a reasonable inference— objectively or subjectively— that Plaintiff was discriminated against by Ms. Jacobs. And each of the perceived "microaggressions" or personal slights can be explained by far more reasonable alternative explanations unrelated to racial animus.

When the Amended Complaint is viewed as a whole, the allegations made against Mr. Carr, Ms. Jacobs, and the Attorney General's Office lack plausibility and should be dismissed.

Respectfully submitted this 16th day of March, 2023.

HENEFELD & GREEN, P.C.

/s/ Noah Green
Noah Green
Georgia Bar No. 468138
*Attorney for Defendants*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(D), this is to certify that the foregoing has been prepared using Book Antiqua 13-point font in compliance with Local Rule 5.1.

/s/ Noah Green
Noah Green
Georgia Bar No. 468138
*Attorney for Defendants*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| CORINNE COLLINS, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. |
| | § | 1:22-cv-04392-WMR-JSA |
| | § | |
| OFFICE OF THE ATTORNEY | § | |
| GENERAL CHRISTOPHER M. CARR, | § | |
| STATE OF GEORGIA DEPARTMENT | § | |
| OF LAW, CHRISTOPHER M. CARR, | § | |
| and JULIE A. JACOBS, | § | |
| | § | |
| *Defendants*. | § | |

**CERTIFICATE OF SERVICE**

This is to certify that I have this day served counsel for the opposing parties with a copy of *Defendants' Reply to Plaintiff's Response in Opposition to the Motion to Dismiss*, by filing same with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

This 16th day of March, 2023.

HENEFELD & GREEN, P.C.

/s/ Noah Green
Noah Green
Georgia Bar No. 468138
*Attorney for Defendant*

3017 Bolling Way NE, Suite 129
Atlanta, Georgia 30305
(404) 841-1275
ngreen@henefeldgreen.com